**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF LSTAR COMMERCIAL MORTGAGE TRUST 2017-5, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-5, <br><br> Plaintiff, <br><br> v. <br><br> YECHIEL RIVLIN, <br><br> Defendant. | Civil Action No. 24-5789 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

     This matter comes before the Court on Defendant Yechiel Rivlin's ("Defendant") Motion to Dismiss Plaintiff Wilmington Trust, National Association's ("Plaintiff") Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 12.) Plaintiff opposed (ECF No. 13), and Defendant replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted in part and denied in part.

---

[1] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND**[2]

A.  **Loan to Whitehorse**

Plaintiff Wilmington Trust is a trustee for the Registered Holders of LSTAR Commercial Mortgage Trust 2017-5, Commercial Mortgage Pass-Through Certificates, Series 2017-5. (Am. Compl. 1, ECF No. 11.) On January 26, 2017, LSTAR Capital Finance II ("LSTAR" or "Original Lender") issued a loan (the "Loan Agreement") in the principal amount of $12.95 million to Whitehorse 401 LLC ("Whitehorse").[3] (*Id.* ¶¶ 8-9; Am. Compl. Ex. A ("Ex. A"), ECF No. 11-1.) In connection with the Loan Agreement, Whitehorse executed a Promissory Note ("Note"), reiterating its obligations under the Loan Agreement. (Am. Compl. ¶ 10; Am. Compl. Ex. B, ECF No. 11-2.)

Whitehorse used the loan to purchase property located at 401 Whitehorse Road, Voorhees Township, New Jersey 08043 (the "Property"). (Def.'s Moving Br. 2, ECF No. 12-1.) Under the terms of the Loan Agreement, Whitehorse must make specified monthly payments to the lender, and failing to do so constitutes an "Event of Default." (Am. Compl. ¶ 24; Ex. A § 8.1.) In addition, under Section 5.1.10 of the Loan Agreement, Whitehorse is required to furnish the lender with

---

[2] For the purposes of this Motion to Dismiss, the Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224. 233 (3d Cir. 2008).

[3] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). An exception to the general rule, however, is that a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (internal quotation marks omitted); *see also Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013). Because the documents the parties executed in connection with the Loan Agreement and the correspondence between the parties are integral to, or explicitly relied upon in the Complaint, the Court will consider these documents and arguments the parties make relying on these documents. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

certain financial statements, including quarterly financial statements, within the time periods specified in the contract. (Am. Compl. ¶¶ 11-12; Ex. A § 5.1.10.)

### B. Guaranty by Rivlin

Concurrently with the execution of the Loan Agreement, on or about January 26, 2017, Defendant Rivlin executed a guaranty of the Loan Agreement (the "Guaranty"), pursuant to which Rivlin guaranteed certain of Whitehorse's obligations under the Loan Agreement. (Am. Compl. ¶ 15; Am. Compl. Ex. C ("Ex. C"), ECF No. 11-3.)

The Guaranty provides in relevant part:

> Yechiel Rivlin . . . hereinafter referred to as 'Guarantor'[] hereby absolutely and unconditionally guarantees to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower. . . . The term 'Guaranteed Recourse Obligations of Borrower' as used in this Guaranty shall mean all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to the Note, the Loan Agreement, or the other Loan Documents. . . .
>
> Guarantor hereby waives notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, non-performance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor.

(Ex. C at 1-2.)

These obligations are subject to the exculpation clause in Section 9.4(a) of the Loan Agreement, which provides in relevant part:

> Notwithstanding the foregoing, the agreement of Lender not to pursue recourse liability as set forth in Subsection (a) . . . SHALL BECOME NULL AND VOID and shall be of no further force and effect and the Loan shall become fully recourse to Borrower and Guarantor, jointly and severally . . . or (B) in the event of Borrower's default under Section 5.1.10 beyond thirty (30) days notice from Lender, (ii) if the Property or any part thereof shall become an asset in a voluntary bankruptcy or insolvency proceeding . . . .

(Ex. A § 9.4(c).)

3

On March 31, 2017, LSTAR assigned and transferred the Loan Agreement, Note, and Guaranty (collectively, the "Loan Documents") to Wilmington Trust.[4] (Am. Compl. ¶ 22.)

### C. Default by Whitehorse & Bankruptcy Petition

On March 6, 2023, Whitehorse failed to make the required monthly payment, which constituted an Event of Default under the Loan Agreement. (*Id.* ¶ 24; Ex. A § 8.) On March 15, 2023, Wilmington Trust declared the loan in default and issued a notice addressed to Whitehorse, with attention to Rivlin, advising of the default and demanding immediate payment. (Am. Compl. ¶ 25; Am. Compl. Ex. G, ECF No. 11-7.)

Whitehorse continued its default by failing to make the required monthly payments for April and May 2023. (Am. Compl. ¶ 26.) On May 19, 2023, Wilmington Trust sent a second notice addressed to both Whitehorse and Rivlin, advising of the continued default and accelerating the sums due and owed under the Loan Documents. (*Id.* ¶ 27; Am. Compl. Ex. H ("Ex. H"), ECF No. 11-8.) The second notice further stated that Whitehorse's failure to make monthly payments was not an "exhaustive" list of defaults, and that Whitehorse had also failed to produce the required documentation under Section 5.1.10 of the Loan Agreement since March of 2023. (*Id.*) Whitehorse continued to default on the loan, and on June 20, 2023, Wilmington Trust sent Whitehorse and Rivlin a third notice, demanding immediate payment and further expounding on Whitehorse's and Rivlin's failure to comply with the reporting requirements under Section 5.1.10 of the Loan Agreement. (Am. Compl. ¶ 28; Am. Compl. Ex. I ("Ex. I"), ECF No. 11-9.) To date, Whitehorse remains in default of the Loan Agreement. (Am. Compl. ¶ 29.)

---

[4] The Loan Agreement, Note, and Guaranty were initially assigned and transferred to LSTAR I, LLC ("LSTAR I"). (Am. Compl. ¶¶ 17-18.) LSTAR I subsequently assigned and transferred the Loan Agreement, Note, and Guaranty back to LSTAR. (*Id.* ¶¶ 19-20.)

On May 1, 2024, Wilmington Trust initiated this action against Rivlin, asserting two claims: (1) breach of guaranty[5] (Count I); and (2) unjust enrichment (Count II). (ECF No. 1.) Wilmington Trust contends that because of Whitehorse's default under Section 5.1.10 of the Loan Agreement, and Whitehorse's and Rivlin's failure to cure such defaults within 30 days' notice, Rivlin is personally liable for all amounts not received. (Am. Compl. ¶ 37.)

Around June 11, 2024, Whitehorse filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Petition"). (*Id.* ¶ 30; Am. Compl. Ex. J, ECF No. 11-10.) Wilmington Trust subsequently filed an Amended Complaint on July 3, 2024, reasserting its breach of guaranty and unjust enrichment claims, and further alleging that Whitehorse's Bankruptcy Petition constitutes an Event of Default under Section 8.1(a)(vii) of the Loan Agreement pursuant to which Wilmington Trust may pursue full recourse liability against Rivlin. (Am. Compl. ¶¶ 30-31, 37.)

Rivlin moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Def.'s Moving Br. 1-2.)

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

---

[5] Wilmington Trust refers to its breach of guaranty claim as a "suit on guaranty." (Am. Compl. ¶ 9.)

5

(2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. **DISCUSSION**

Rivlin moves to dismiss Wilmington Trust's claims of: (1) breach of guaranty (Count I) as inadequately pled under Rule 8; and (2) unjust enrichment (Count II) as impermissibly duplicative of Wilmington Trust's breach of guaranty claim. (Def.'s Moving Br. 9-21.) The Court addresses each of these arguments in turn.

#### A. **Breach of Guaranty (Count I)**

Rivlin first argues that Wilmington Trust's breach of guaranty claim is tantamount to an "unadorned, the defendant-unlawfully-harmed-me accusation" because it is "a vague five paragraph recitation of the subject loan documents" and fails to plead the required elements of a breach of guaranty claim. (Def.'s Moving Br. 9-11.)

Under New Jersey law,[6] a prima facie case for breach of guaranty claim requires that the plaintiff adequately allege: (1) execution of the guarantee by the guarantor; (2) the principal obligation and terms of the guaranty; (3) lender's reliance on the guaranty; (4) default by principal obligator; (5) written demand for payment on the guarantee; and (6) failure of the guarantor to pay upon written demand. *Knights Franchise Sys., Inc. v. First Value RC, LLC*, No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *U.S. on Behalf of Small Bus. Admin, v. DelGuercio*, 818 F. Supp. 725, 727–28 (D.N.J. 1993)).[7]

Here, Rivlin argues Wilmington Trust has failed to adequately plead elements three through six of a prima facie breach of guaranty claim.[8] (Def.'s Moving Br. 9-11.) The Court, however, disagrees and finds that Wilmington Trust has adequately pled each of these elements sufficient to survive a motion to dismiss.

---

[6] The Court does not engage in a robust choice of law analysis because the parties are correct in their assumption that New Jersey law governs. The Loan Agreement states it is controlled by New Jersey law, and the Guaranty states it shall be controlled by the laws of the state in which the Property resides. Given the terms of the Loan Agreement, and the Property is located in New Jersey, New Jersey law governs. (*See* Ex. A § 10.3; Ex. C at 5); *see generally Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324, 341 (1992) ("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice."); *cf. Smith v. CitiMortgage, Inc.*, 702 F. Supp. 3d 247, 252-53 (D.N.J. 2023) (providing that the parties' assumption that New Jersey law governed supported application of New Jersey law).

[7] While Plaintiff argues this legal standard need not be applied because *DelGuercio* involved a Pennsylvania bank and property located in Pennsylvania, this Court has applied this legal standard for breach of guaranty claims even under New Jersey law. *See, e.g., Consol. Brick & Bldg. Supplies, Inc. v. Alosi Const., Inc.*, No. 05-1490, 2006 WL 2135805, at *6 (D.N.J. July 28, 2006); *Howard Johnson Int'l, Inc. v. Manomay, LLC*, No. 16-7621, 2019 WL 3214165, at *5 (D.N.J. July 17, 2019); *Ramada Worldwide Inc. v. Keys Hosp., LLC*, No. 18-3993, 2025 WL 274606, at *4 (D.N.J. Jan. 23, 2025).

[8] Rivlin does not contest that Wilmington Trust has adequately pled the first two elements of a breach of guaranty claim. (Def.'s Moving Br. 10.)

7

Beginning with the third element, Wilmington Trust adequately pleads that LSTAR, the original lender, relied on the Guaranty when extending the loan to Whitehorse. The express terms of the Guaranty state "FOR VALUE RECEIVED, and *to induce* [Original Lender], to lend to [Whitehorse], . . . [Rivlin] hereby absolutely and unconditionally guarantees to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower." (Ex. C at 1 (emphasis added).) Rivlin argues this Court should not consider the express language of the Guaranty, because Wilmington Trust "asserted [it] for the first time in its opposition to the Motion [to Dismiss]." (Def.'s Reply Br. 5-6, ECF No. 14.) This argument is unpersuasive. The Guaranty was attached as an exhibit to Wilmington Trust's Amended Complaint, and thus is "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) ("[T]he types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'") Considering the well-pleaded allegations set forth in the Amended Complaint, and the terms of the Guaranty, Wilmington Trust adequately pleads LSTAR relied on the Guaranty, and at minimum, has included sufficient allegations from which LSTAR's reliance on the Guaranty can be "reasonably inferred." *Pierce v. Montgomery Cnty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (inferring that the plaintiff adequately pled two elements of a breach of contract claim even though plaintiff "d[id] not specifically plead" breach of contract or use the word "breach" in its complaint); *see also Ramada Worldwide Inc.*, 2025 WL 274606, at *5 (concluding that lender's reliance upon the guaranty was "evidenced by its express language," which states that its purpose was to "induce" borrower to sign the agreement).

With respect to the fourth element, Wilmington Trust has sufficiently alleged default by the principal obligator by alleging Whitehorse has been in default of the Loan Agreement since at least March 2023. (Am. Compl. ¶¶ 24-29.) Rivlin misconstrues this element and the legal standard

at the motion to dismiss stage in arguing Wilmington Trust must "demonstrate that Rivlin defaulted on the Guaranty," which Rivlin argues it cannot do in part because Wilmington Trust "waived its right to demand compliance with Section 5.1.10." (Def.'s Moving Br. 12-16.) Here, Wilmington Trust need not demonstrate that Rivlin defaulted on the Loan Documents. Instead, Wilmington Trust need only allege default by the principal obligator, Whitehorse, which Wilmington Trust plainly does. (Am. Compl. ¶¶ 24-29); *see DelGuercio*, 818 F. Supp. at 728 (assessing the fourth element of a breach of guaranty claim by determining whether the borrower, not guarantor, defaulted on the loan); *Ramada Worldwide Inc.*, 2025 WL 274606, at *4 (same).

As to the fifth element, regarding written demand for payment on the guarantee, Wilmington Trust adequtaely alleges notice was waived by Rivlin when he executed the Guaranty, and that Wilmington Trust nonetheless provided written demand for payment from Rivlin on at least two occasions. (Am. Compl. ¶¶ 27, 28; Ex. H, Ex. I.) Finally, as to the sixth element, failure of the guarantor to pay upon written demand, Wilmington Trust sufficiently alleges that "Guarantor failed to cure the noticed defaults, despite demand." (Am. Compl. ¶ 29.)

Wilmington Trust thus adequately pleads the elements of a breach of guaranty claim and includes sufficient factual allegations to meet Rule 8's pleading standard. The Court finds it otherwise premature to consider the precise scope of Guarantor liability, if any, at this early stage in litigation. *Hertz Corp. v. Frissora*, No. 19-8927, 2021 WL 2253526, at *8 (D.N.J. June 3, 2021) ("[Plaintiffs'] reading of [the contract] may or may not ultimately be correct, but [their] reasonable contract interpretation is sufficient to overcome a motion to dismiss."); *Wells Fargo Bank, N.A. v. Lighter Gateway IV, LLC*, No. 17-2036, 2017 WL 5957072, at *20 (D.N.J. Dec. 01, 2017) (declining to resolve issues of contract construction at motion to dismiss stage). Accordingly, Rivlin's Motion to Dismiss as to Wilmington Trust's breach of guaranty claim (Count I) is denied.

B.     **Unjust Enrichment (Count II)**

Rivlin also moves to dismiss Wilmington Trust's unjust enrichment claim (Count II) as impermissibly duplicative of Wilmington Trust's breach of guaranty claim. (Def.s' Moving Br. 18-21.) The Court agrees with Rivlin here.

Under New Jersey law, a plaintiff may seek relief under the equitable theory of unjust enrichment when "the opposing party received a benefit and [the] retention of that benefit without payment would be unjust." *Gebhardt v. Beri*, No. 23-3008, 2024 WL 3279531, at *9 (D.N.J. June 14, 2024) (citing *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (2016)). To succeed on an unjust enrichment claim, a plaintiff must demonstrate "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Thieme*, 227 N.J. 269 at 288 (quotations omitted). However, "[w]here there is an express contract covering the identical subject matter of the claim, [P]laintiff cannot pursue a quasi-contractual claim for unjust enrichment." *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04-4540, 2005 WL 1199045, at *7 (D.N.J. May 18, 2005).

Here, Rivlin does not dispute the "existence of the Guaranty or the Loan Agreement," but only whether he breached the Guaranty.[9] (Def.'s Reply Br. 11-13.) Because neither party disputes that the terms of the Loan Documents "cover[] the dispute at issue," Wilmington Trust is barred from asserting an unjust enrichment claim. *Beri*, 2024 WL 3279531, at *9-10 (dismissing unjust enrichment claim because it was "based on the same alleged conduct as the breach of contract claim"); *see also Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 618 (D.N.J. 2013) (holding a plaintiff may not seek relief a under theory of unjust enrichment where the claim

---

[9] Wilmington Trust also agrees to "voluntarily withdraw" its unjust enrichment claim should Rivlin concede the validity of the Guaranty and waiver provisions. (Pl.'s Opp'n Br. 15, ECF No. 13.)

"simply duplicates, or replaces, a conventional contract or tort claim"). Accordingly, Plaintiff's unjust enrichment claim (Count II) is dismissed without prejudice.[10]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied in part and granted in part. An Order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[10] While Rivlin falls short of expressly conceding the validity of the Loan Documents, he concedes their "existence" and admits that an unjust enrichment claim would be proper where a party, for example, contests the validity of the contract at issue. (Def.'s Reply Br. 11-12). Should Rivlin, however, contest the validity of the Loan Documents, Wilmington Trust may choose to reassert its unjust enrichment claim. *JJD Elec., LLC v. SunPower Corp., Sys.*, No. 22-1275, 2024 WL 3219294, at *9 (D.N.J. June 28, 2024) (explaining that an unjust enrichment claim is not duplicative to a breach of contract claim where "the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy") (quoting *Grudkowski v. Foremost Ins. Co.*, 556 F.App'x 165, 170 n.8 (3d Cir. 2014)).

11